**FILED**

**September 13, 2018**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 1:35 P.M. EASTERN**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| **ALICEIA HOLLIS,** ) | **Docket No. 2016-03-0298** |
| **Employee,** ) | |
| **v.** ) | |
| **KOMYO AMERICA,** ) | **State File No. 23307-2016** |
| **Employer,** ) | |
| **And** ) | |
| **TOKIO MARINE AMERICA INS. CO.,** ) | **Judge Lisa A. Lowe** |
| **Carrier.** ) | |

## COMPENSATION HEARING ORDER

This matter came before the Court for a Compensation Hearing on August 29, 2018. The central legal issue is whether Ms. Hollis' herniated disc arose primarily out of and in the course and scope of her employment with Komyo America. For the reasons below, this Court finds that Ms. Hollis failed to establish this by a preponderance of the evidence. Accordingly, the Court holds that Ms. Hollis is not entitled to the requested benefits. However, she is entitled to ongoing reasonable and necessary medical care for her work-related lumbar strain.

### History of Claim

Ms. Hollis worked for Komyo as a material handler. On January 18, 2016, as she moved a transmission to a crate, several car hoods tipped over. The hoods hit her, and she twisted to the left to hold them up off her body. She began experiencing back pain and leg tingling within thirty minutes of the event. Ms. Hollis requested treatment the next day. Komyo provided a panel of physicians, from which she selected Dr. John Sanabria at Lakeway Urgent Care (Lakeway).

Lakeway diagnosed her with a lumbar sprain, prescribed medications, and assigned restrictions. During a follow-up visit, Lakeway continued the restrictions and medications and referred her to physical therapy. Ultimately, Dr. Sanabria ordered an MRI.

1

Following the MRI, Dr. Sanabria explained to Ms. Hollis that the herniated disc was not responsible for the pain into her buttocks. He further explained that her continued pain could be caused by the advanced pre-existing SI joint degenerative changes, which did not primarily result from her work-related strain. Dr. Sanabria recommended Ms. Hollis "follow up with her primary care physician . . . for further evaluation and management as a non-work-related issue." He placed her at maximum medical improvement (MMI) on March 7 and did not assign an impairment rating or permanent restrictions.

Ms. Hollis followed Dr. Sanabria's recommendation and saw her primary care physician, who referred her to a neurosurgeon, Dr. Kent Sauter. Dr. Sauter recommended surgery or steroid injections. Ms. Hollis underwent surgery and completed post-op care, and Dr. Sauter released her to work on July 18, 2016, with permanent restrictions of no lifting greater than thirty pounds. Dr. Sauter last saw Ms. Hollis on January 11, 2017, and referred her to Dr. Elmer Pinzon for pain management.

Dr. Pinzon performed trigger-point and facet-joint injections, ordered physical therapy, prescribed medications, and gave Ms. Hollis a TENS unit. Later, Dr. Pinzon performed a nerve ablation procedure and implanted a spinal cord stimulator trial.

The following testimony was provided at the Compensation Hearing.

*Lay Testimony*

Ms. Hollis stated that she only saw Dr. Sanabria on the last visit. He did not perform an exam, and he only spent about ten minutes with her. She said he read the MRI results, lifted her work restrictions, and said she should see her family doctor. In contrast, Dr. Sauter performed a full exam. Ms. Hollis confirmed that Komyo accommodated her restrictions from Lakeway and Dr. Sauter. However, she testified that she left Komyo because of constant pain and has been unable to work since. Ms. Hollis acknowledged that she never asked Komyo for a return visit to Dr. Sanabria or for a second opinion before proceeding with unauthorized treatment. She noted that she did not have contact information for the workers' compensation carrier.

Ms. Hollis asked the Court to award: temporary disability benefits from April 28, 2016, until January 11, 2017; permanent partial disability benefits based on a twelve- percent impairment rating; extraordinary relief of 275 weeks of benefits; past unauthorized medical expenses; and future medical treatment.

Komyo's Human Resources Assistant Manager, Michael Oaks, testified that he provided Ms. Hollis with the initial panel. He said that Komyo accommodated her restrictions. Mr. Oaks stated that Komyo could have accommodated Dr. Sauter's thirty-

2

pound permanent weight restriction. He acknowledged that he never gave Ms. Hollis the carrier contact information.

*Medical Expert Testimony*

As for authorized care, Dr. Sanabria testified that he sees all patients in conjunction with his staff but is directly involved in their care. He noted Ms. Hollis did not mention prior back problems, but he reviewed records from March 2009 in which she complained of back pain going down her right buttock. Dr. Sanabria found that Ms. Hollis suffered from lumbar strain but that her herniated disc and other MRI findings were pre-existing and not related to her work injury. He placed her at MMI on March 7, 2016, and did not assign an impairment rating or permanent restrictions. He stated Ms. Hollis never returned to his office after MMI, requested an appointment, or asked for a second opinion.

On cross-examination, Dr. Sanabria admitted that the 2009 records documented pain into Ms. Hollis's right leg and buttock, but her complaints from this incident involved her left leg and buttock. Dr. Sanabria acknowledged that Dr. Sauter is more competent to know whether someone needs surgery, but they are equally qualified to determine causation. In fact, he said that he might be more qualified because of the amount of workers' compensation patients he sees, which comprises approximately ten percent of his practice.

As for unauthorized treatment, Dr. Sauter testified Ms. Hollis suffered from a disc herniation on the left side at L4-5 causing radiculopathy and her pain pattern was consistent with that herniation. He stated she more likely than not would have been off work from April 8, 2016, until he released her to work with a thirty-pound weight restriction on July 18. On November 28, Dr. Sauter took Ms. Hollis off work again and kept her off indefinitely. Dr. Sauter provided his opinion that her ruptured disc and surgery were more likely than not related to the work injury.

However, on cross-examination, Dr. Sauter said, "she told me what causation was. I wasn't terribly concerned with causation as far as wanting to treat her. Causation was incidental to what I needed to do for her at that point." He said that he does not look beyond what the patient tells him to assess medical causation. Dr. Sauter explained his methodology for assessing medical causation for workers' compensation patients as follows:

> I usually ask them what caused their pain, when did the pain start. And if the history that they give me, in Ms. Hollis' case specifically, "I twisted while bending over when some objects fell on my back and that's when my pain started," and it sounds reasonable, then I accept it as causation.

Dr. Sauter said that Ms. Hollis had not reached MMI as of her last visit on January 11, 2017, but he would put her at MMI if she did not want any further treatment from him. A

3

day or two before his deposition, Dr. Sauter calculated Ms. Hollis' permanent impairment at twelve percent. He admitted that he did not place Ms. Hollis at MMI or perform an updated physical examination before assigning the impairment rating, as required by the AMA Guides to Evaluation of Permanent Impairment. Dr. Sauter also acknowledged that he did not document any clinical findings of radiculopathy, so Ms. Hollis might fall under the seven-percent impairment category for non-verifiable radiculopathy. Dr. Sauter explained, "I think if we want an impairment that's going to stand up in court, we probably need an examination that's more current. The examination – what I gave you was based on what I thought she deserved at the last time I saw her."

Finally, Dr. Pinzon testified that Ms. Hollis' work injury caused her back problems, ruptured disc, and necessity for surgery. He said his causation opinion was a combination of Dr. Sauter's notes, Ms. Hollis' history, and his review of the provided medical records. Dr. Pinzon did not assign an impairment rating but said he believed that Dr. Sauter's rating would be appropriate, given her surgery. He acknowledged that Ms. Hollis would need to be at MMI before assignment of a rating. Dr. Pinzon agreed that she would have been at MMI at her last visit with Dr. Sauter if she were not going to pursue any further treatment. He also stated that he would be comfortable using the last visit to assign impairment if it were within a three- to six-month period.

### Findings of Fact and Conclusions of Law

In *Panzarella v. Amazon.com, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *10-11 (May 15, 2017), the Workers' Compensation Appeals Board stated the employee's burden of proof as follows: "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *See also* Tenn. Code Ann. § 50-6-239(c)(6) (2017). The employee must establish that her injury or condition "arose primarily out of and in the course and scope of employment" by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(A).

The employee's burden requires a showing "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). The employee must establish this showing "to a reasonable degree of medical certainty." Tenn. Code Ann. §50-6-102(14)(C). "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E).

Here, the medical experts disagreed about causation and permanent impairment. Because Dr. Sanabria was the authorized treating physician, his opinion that Ms. Hollis'

4

herniated disc was not related to the work injury is presumed correct.

Considering Dr. Sauter's opinion, the Court noted in a prior Expedited Hearing Order that:

> Dr. Sauter's notes contain the history that Ms. Hollis injured her back at work and his impression that she sustained a herniated disc. However, the Court finds that alone is insufficient to establish that Dr. Sauter is of the opinion Ms. Hollis' disc herniation arose primarily out of and in the course and scope of her employment. The fortuitous convergence in a doctor's notes of a diagnosis of a condition, accompanied by a history indicating the employee reported he or she suffered an injury on the job, falls short of the express medical expert opinion on causation that the Workers' Compensation Act requires.

(Internal citation omitted).

The parties deposed Dr. Sauter, but his deposition testimony did little to explain his causation determination. In fact, Dr. Sauter stated he was not concerned with causation and that Ms. Hollis told him "what causation was." He testified that he asks patients what caused the pain, and if it sounds reasonable, he accepts it as causation. Based on this testimony, the Court holds that Dr. Sauter's causation opinion fails to rebut Dr. Sanabria's causation opinion by a preponderance of the evidence. Dr. Pinzon treated Ms. Hollis for pain management and based his opinion, at least in part, on Dr. Sauter's opinion and records. For this reason, the Court holds that Dr. Pinzon's opinion also fails to rebut Dr. Sanabria's opinion by a preponderance of the evidence.

The Court concludes that Ms. Hollis failed to establish by a preponderance of the evidence that her herniated disc arose primarily out of and in the course and scope of her employment. Therefore, the Court holds that Ms. Hollis is not entitled to benefits relative to her herniated disc. However, Ms. Hollis is entitled to ongoing reasonable and necessary medical care for her work-related lumbar strain.

**IT IS, THEREFORE, ORDERED** as follows:

1. Komyo shall provide Ms. Hollis with ongoing reasonable and necessary medical care for her work-related lumbar strain. Dr. Sanabria remains the authorized treating physician.

2. Komyo shall pay the $150.00 filing fee under Tennessee Compilation Rules and Regulations 0800-02-21-.07(2018) to the Court Clerk within five business days of the date of this order, for which execution may issue if necessary.

3. Komyo shall file a Statistical Data Form (SD-2) within ten business days of entry of this order.

4. Absent an appeal, this Order shall become final thirty calendar days after entry.

**ENTERED September 13, 2018**

_Lisa A. Lowe_

**LISA A. LOWE, JUDGE**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:

1. First Report of Work Injury
2. Wage Statement
3. Panel of Physicians
4. Medical Records with Table of Contents
5. Excerpts of the 6th Edition of the AMA Guides
6. Employee's Discovery Responses
7. Temporary Work Restrictions Recap
8. Deposition Transcript of Aliceia Hollis
9. Deposition Transcript of Jacob Wilson (marked for identification only)
10. Deposition Transcript of Dr. Kent Sauter with Exhibits
11. Deposition Transcript of Dr. Elmer Pinzon with Exhibits
12. Deposition Transcript of Dr. Sanabria
13. Komyo Job description

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Motion to Compel
4. Order Denying Employer's Motion to Compel
5. Motion to Reconsider
6. Response to Motion to Reconsider
7. Order Denying Employer's Motion to Reconsider
8. Request for Expedited Hearing
9. Request for Initial Hearing
10. Order
11. Employer's Brief in Opposition to Employee's Petition for Medical Benefits and Temporary Total Disability Benefits
12. Notice of Filing Medical Records of Dr. Kent Sauter
13. Agreed Order Allowing Defendant's Attorney Access to Plaintiff's Medical And Employment Records
14. Notice of Filing Medical Records of Walgreens
15. Expedited Hearing Order Denying Medical and Temporary Disability Benefits
16. Employer's Motion for Summary Judgment
17. Employer's Memorandum of Law in Support of Its Motion for Summary Judgment
18. Employer's Statement of Undisputed Facts
19. Employee's Response to Motion for Summary Judgment and Motion to Stay Motion for Summary Judgment

20. Employer's Reply to Employee's Response to Motion for Summary Judgment and Objection to Cancellation of Hearing
21. Employee's Response to Employer's Reply for Continuance of the Motion for Summary Judgment
22. Order Granting Employee's Motion to Stay the Motion for Summary Judgment
23. Notice of Deposition of Dr. Sauter
24. Order
25. Employer's Motion to Compel
26. Notice of Filing Plaintiff's Answers to Interrogatories and Request for Production of Documents
27. Employer's Reply to Employee's Response to Motion to Compel
28. Employee's Response to Motion to Compel
29. Order Granting Motion to Compel
30. Notice of Withdrawal of Motion for Summary Judgment
31. Notice of Deposition of Dr. Elmer Pinzon
32. Request for Scheduling Conference
33. Scheduling Hearing Order
34. Order Resetting Post Discovery Alternative Dispute Resolution
35. Notice of Deposition of Dr. Sanabria
36. Notice of Filing Deposition of Dr. Ken Sauter
37. Notice of Filing Deposition of Dr. Elmer Pinzon
38. Notice of Filing Deposition of Dr. John Sanabria
39. Pre-Compensation Hearing Statement of Employee
40. Agreed Order of Substitution of Counsel
41. Employer's Trial Brief
42. Employer's Pre-Compensation Hearing Statement
43. Employer's Witness and Exhibit List
44. Employee's Motion to Continue and Amended Scheduling Order
45. Employer's Response to Employee's Motion for Continuance
46. Order Granting Continuance
47. Post ADR Dispute Certification Notice

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on September 13, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|------|------|------|------|
| Douglas Nichols, Employee's Attorney | | | X | dnichol@nicholassociates.com |
| Chris Rowe, Employer's Attorney | | | X | cgrowe@mijs.com |

PENNY SHRUM, COURT CLERK *by permission KAW*
wc.courtclerk@tn.gov

9



**COMPENSATION HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____

**Employee**

_____

**Employer and Carrier**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

Judge_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**List of Parties**

**Appellant (Requesting Party):**_____At Hearing:☐Employer☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____At Hearing:☐Employer☐Employee

Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.

[Signature of appellant or attorney for appellant]      _____

Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by the Court which can be found on their website at the following address:
http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1.  Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone     $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing      $ _____ per month

Gas              $ _____ per month    Child Care    $ _____ per month

Transportation   $ _____ per month    Child Support $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____)

10. Assets:

Automobile            $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                 $ _____    (FMV) _____

Other                 $ _____    Describe: _____

11. My debts are:

Amount Owed                     To Whom

_____             _____

_____             _____

_____             _____

_____             _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____